UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SHQIPE BERISHA, individually and as parent and natural guardian of ISMAEL MARZAN, JR., infant,

        Plaintiffs,

  -against-

NICHOLAS SCOPPETTA, individually and as Commissioner; JACQUELINE ANDERSON, individually and as caseworker; ANNE MARIE PEREIRA, individually and as supervisor; BONNIE LOWELL individually and as manager;
LAURA STUART, individually and as Police Officer;
JOHN DOE 1, individually and as Police Officer;
JOHN DOE 2, individually and as Police Officer;
JOHN DOE 3, individually and as Police Officer;
BERNARD KERIK, individually and as
Police Commissioner; and CITY OF NEW YORK,

        Defendants.
-----------------------------------------------------------------------X

**CV 02 1142**

**COMPLAINT**

PLAINTIFFS DEMAND
TRIAL BY JURY

**WEINSTEIN, J.**

**POLLAK, M.J.**

Plaintiffs, appearing by their attorneys Lansner & Kubitschek, complain of defendants as follows:

### I. PRELIMINARY STATEMENT

1.     This is a civil rights action, pursuant to 42 U.S.C. §1983, on behalf of a victim of domestic violence and her child. In this action plaintiffs seek damages and declaratory and injunctive relief to redress the deprivation, under color of state law, of rights secured to them under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Plaintiffs also seek damages for the deprivation of their rights under New York law. Under the misnomer of "child protection," defendants routinely harass and terrorize victims of domestic violence and their children, violating their fundamental rights.

## II. JURISDICTION

2. Jurisdiction is conferred upon this court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States. The court has pendent jurisdiction over plaintiffs' state law claims.

## III. PARTIES

3. Plaintiff Shqipe Berisha is the mother of infant plaintiff Ismael Marzan, Jr., born on October 22, 1999.

4. Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

5. Defendant City's Administration for Children's Services ("ACS") is authorized by New York State law to investigate complaints of child abuse and neglect and to offer rehabilitative and preventive services to both children and parents.

6. Upon information and belief, defendant Nicholas Scoppetta was Commissioner of the ACS of the City of New York from January 1, 2001, through December 31, 2001, and is sued in his individual and official capacities.

7. As Commissioner of ACS, defendant Scoppetta was responsible for making and/or approving policies for ACS, including policies regarding the investigation of alleged child abuse or maltreatment, the removal and detention of children from their families, and the training and supervision of employees in ACS.

8. As Commissioner of ACS, defendant Scoppetta was responsible for ACS's compliance with the Constitution, statutes, regulations, and common law of the United States and the State of New York.

9.      Upon information and belief, defendant Jacqueline Anderson is employed by the City of New York as a caseworker for ACS.

10.     Upon information and belief, defendant Anne Marie Edreira is employed by the City of New York as a supervisor for ACS.

11.     Upon information and belief, defendant Bonnie Lowell is employed by the City of New York as a child protective manager for ACS.

12.     Upon information and belief, in January, 2001, defendant Laura Stuart was employed by the City of New York as a police officer.

13.     Upon information and belief, in January, 2001, defendants Doe 1, Doe 2, and Doe 3 were employed by the City of New York as a police officer.

14.     Upon information and belief, during the month of January, 2001, defendant Kerik was Commissioner of the New York Police Department ("NYPD") of the City of New York, and is sued in his individual and official capacities.

15.     As Commissioner of the NYPD, defendant Kerik was responsible for making and/or approving policies for the NYPD, including policies investigation of domestic violence, the removal and detention of children from their families, and the training and supervision of employees in the NYPD.

16.     As Commissioner of the NYPD, defendant Kerik was responsible for the NYPD's compliance with the Constitution, statutes, regulations, and common law of the United States and the State of New York.

## IV. FACTS

17.     In December 2000, plaintiff and Ismael Marzan, Sr., the infant plaintiff's father, signed a lease for an apartment. Plaintiff had begun to move into the apartment and was

sporadically staying there with infant plaintiff, while Mr. Marzan resided elsewhere.

18. On January 1, 2001, Mr. Marzan was inebriated and forced his way into the apartment.

19. Plaintiff attempted to prevent Mr. Marzan from entering the apartment but was unsuccessful.

20. When plaintiff attempted to call the police Mr. Marzan ripped the phone cord out of the wall jack, grabbed the plaintiff and dragged her across the room, by her hair.

21. Upon information and belief a neighbor in the building called the police.

22. Defendants Stuart, Doe 1, Doe 2, and Doe 3 arrived at plaintiff's apartment and arrested both plaintiff and Mr. Marzan, even though plaintiff was the victim of a crime, of which Marzan was the perpetrator. Defendants Stuart, Doe 1, Doe 2, and Doe 3 brought plaintiff, infant plaintiff, and Mr. Marzan to the precinct house.

23. Defendants Stuart, Doe 1, Doe 2, and Doe 3 placed infant plaintiff in the custody of the ACS, who placed him in foster care.

24. Defendants Stuart, Doe 1, Doe 2, and Doe 3 removed infant plaintiff from plaintiff's custody without probable cause to believe that infant plaintiff was in danger, and without seeking or obtaining a court order.

25. Defendants Stuart, Doe 1, Doe 2, and Doe 3 held plaintiff in police custody for twelve hours.

26. Finally, on January 2, 2001, the District Attorney's office ordered the police to release plaintiff.

27. Upon information and belief, members of the New York City Police

Department or ACS reported to the State Central Registrar of Child Abuse and Maltreatment (the child abuse hotline) that infant plaintiff had been neglected by Mr. Marzan and plaintiff.

28. Upon information and belief, agents and/or employees of defendant Scoppetta assigned defendant Anderson to investigate said report.

29. Upon information and belief, agents and/or employees of defendant Scoppetta assigned defendant Edreira to supervise defendant Anderson.

30. Upon information and belief, agents and/or employees of defendant Scoppetta assigned defendant Lowell to supervise defendants Edreira and Anderson.

31. Upon information and belief, on January 4, 2001, defendants Lowell, Edreira, and Anderson commenced child neglect proceedings against plaintiff in Family Court, alleging that plaintiff was neglectful for engaging in domestic violence in front of the child and for using drugs. Said allegations against plaintiff were false and defendants Scoppetta, Anderson, Edreira, and Lowell knew or should have known that the allegations were false.

32. Defendants failed to notify plaintiff that they had commenced proceedings against her.

33. Based solely on said false allegations, defendants Anderson, Edeira, and Lowell obtained an order from the Family Court permitting ACS to keep infant plaintiff in ACS custody.

34. Defendants Anderson, Edreira, and Lowell arbitrarily refused to permit plaintiff's parents to care for infant plaintiff.

35. On January 19, 2001, plaintiff and her attorney appeared in Manhattan Family Court. Judge Helen Sturm issued an order of protection for plaintiff against Mr. Marzan, ordered plaintiff's landlord, the New York City Housing Authority, to change the locks on

plaintiff's apartment, and ordered ACS to return infant plaintiff to the plaintiff as soon as the locks were changed.

36. ACS returned infant plaintiff to plaintiff on January 22, 2001.

37. On September 25, 2001, ACS withdrew the charges that plaintiff had been neglectful for being a victim of domestic violence.

38. On January 25, 2002, Judge Sturm dismissed the remaining charges that had been made against plaintiff.

39. Upon information and belief, the actions of defendants Anderson, Edreira, and Lowell were under the supervision, direction, and tacit approval of defendant Scoppetta.

40. Within ninety days after the claim herein sued upon arose, plaintiff caused a Notice of Claim in writing, sworn to by plaintiff, to be served upon defendant City of New York. Said claim has not been paid and more than 30 days have lapsed since the service of Notice.

## V. FIRST CAUSE OF ACTION

41. Plaintiffs reallege and incorporate by reference paragraphs 1 through 40.

42. Upon information and belief, defendants City, Scoppetta and Kerik have a policy of removing and detaining children from mothers who are victims of domestic violence without probable cause to believe that continuing in the care of their mothers presents an imminent danger to the children's life or health, without due process of law, and based upon constitutionally inadequate investigations.

43. Acting pursuant to said policy, without probable cause to believe that continuing in the care of their mother presented an imminent danger to the children's life or health, without due process of law, and based upon a constitutionally inadequate investigation,

6

defendants Anderson, Edreira, Lowell, Stuart, Doe 1, Doe 2, and Doe 3 removed infant plaintiff from plaintiff's custody.

44. Acting pursuant to said policy, without probable cause to believe that continuing in the care of his mother presented an imminent danger to the child's life or health, without due process of law, and based on a constitutionally inadequate investigation, all defendants detained infant plaintiff in government custody for three weeks.

45. Said policy, and the removal and detention effectuated pursuant to said policy, constituted an unlawful interference with plaintiff's liberty interest in the care and custody of her child, the infant plaintiff herein, in violation of the First and Fourteenth Amendments to the United States Constitution. Said policy, and its implementation, were gross deviations from acceptable professional conduct.

46. Said policy and its implementation constituted unlawful interference with infant plaintiff's liberty interest in being cared for by his mother.

47. As a result of the defendants' policy and its implementation, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered loss of liberty and loss of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

48. In the alternative, defendants City, Scoppetta and Kerik failed to adopt policies requiring their employees to remove children only if they had probable cause to believe that continuing in the care of their mothers presents an imminent danger to the children's life or health, only if they provided due process of law to children and parents, and only if they had investigated to determine said factors. Defendants City, Scoppetta and Kerik knew or should have known that said failure would cause defendants' agents and employees to remove and

7

detain children without probable cause to believe that continuing in the care of their mothers presents an imminent danger to the children's life or health and without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

49. Defendants City, Scoppetta and Kerik knew or should have known that their failure to adopt a policy regarding the removal of children from their parents would cause defendants' agents and employees to violate children's and parents' rights to live together as a family without state intervention, contrary to the First and Fourteenth Amendments to the United States Constitution.

50. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## VI. SECOND CAUSE OF ACTION

51. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50.

52. On January 1, 2001, when defendants Stuart, Doe 1, Doe 2, and Doe 3 caused plaintiff to be arrested, plaintiff was acting in a peaceful and lawful manner and had committed no crime.

53. Defendants Stuart, Doe 1, Doe 2, and Doe 3 seized and detained plaintiff without probable cause.

54. In seizing and detaining plaintiff, defendants Stuart, Doe 1, Doe 2 and Doe 3 abused their power as government employees.

55. Upon information and belief, defendants City and Kerik have a policy or practice of seizing and/or arresting innocent victims of domestic violence as well as batterers.

56. By reason of their acts and omissions, defendants City, Kerik, Stuart, Doe 1, Doe 2 and Doe 3, acting under color of state law, in gross and wanton disregard of plaintiff's rights, subjected plaintiff to an unreasonable seizure and detention, in violation of the Fourth and Fourteenth Amendments of the United States Constitution. By reason of their acts and omissions, defendants, acting under color of state law, in gross and wanton disregard of plaintiff's rights, deprived plaintiff of her right to liberty, and to association with her son, in violation of the First and Fourteenth Amendment of the United States Constitution.

57. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child and other expenses; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## VII. THIRD CAUSE OF ACTION

58. Plaintiffs reallege and incorporate by reference paragraphs 1 through 57.

59. On January 1, 2001, defendants Stuart, Doe 1, Doe 2 and Doe 3 falsely, wrongfully and unlawfully arrested plaintiff, in violation of the Constitution and laws of the State of New York.

60. From January 1, 2001, to January 2, 2001, defendants Stuart, Doe 1, Doe 2 and Doe 3 falsely, wrongfully, and unlawfully imprisoned plaintiff.

61. In arresting and imprisoning plaintiff, defendants Stuart, Doe 1, Doe 2 and Doe 3 were acting in the course of their employment for the City of New York.

62. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child and other expenses; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme

9

humiliation, pain and suffering, terror, mental anguish, and depression.

### VIII. FOURTH CAUSE OF ACTION

63. Plaintiffs reallege and incorporate by reference paragraphs 1 through 62.

64. Defendants City and Scoppetta provided grossly inadequate and unprofessional training and supervision to their agents and employees regarding:

   a. investigating child abuse and neglect cases involving mothers who are victims of domestic violence;

   b. determining whether there exists probable cause to believe that continuing in the care of their mothers presents an imminent danger to the children's life or health, in order to remove or detain children whose mothers are domestic violence victims;

   c. the provision of notice and an opportunity to be heard prior to the removal of children; and

   d. the constitutional rights of parents and children in child welfare investigations.

65. Defendants City and Scoppetta knew or should have known that their employees were improperly trained and supervised in said issues.

66. Defendants City and Scoppetta knew or should have know that their employees would confront said issues in their work and that, without training, would make the wrong decisions on said issues.

67. By reason of their lack of training, defendants Anderson, Edreira, and Lowell improperly removed the infant plaintiff from the custody of plaintiff.

68. By reason of their lack of training, defendants Anderson, Edreira, and Lowell detained infant plaintiff from plaintiff for three weeks without adequate notice to

plaintiff, without adequate investigation, without probable cause, and without due process of law.

69. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## IX. FIFTH CAUSE OF ACTION

70. Plaintiffs reallege and incorporate by reference paragraphs 1 through 69.

71. By removing and detaining the infant plaintiffs from plaintiff, defendants unlawfully interfered with plaintiff's custody of her minor child.

72. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## X. SIXTH CAUSE OF ACTION

73. Plaintiffs reallege and incorporate by reference paragraphs 1 through 73.

74. By removing and detaining the infant plaintiff, defendants unlawfully arrested and imprisoned said infant plaintiff.

75. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

## XI. SEVENTH CAUSE OF ACTION

76. Plaintiffs reallege and incorporate by reference paragraphs 1 through 75.

77. All of the defendants had a duty to act with reasonable care toward plaintiffs and with the highest degree of care toward the infant plaintiff.

78. Defendants' removal and detention of the infant plaintiff and defendants' prosecution of plaintiff constituted gross breaches of said duty and gross deviations from accepted professional standards.

79. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

### XII. EIGHTH CAUSE OF ACTION

80. Plaintiffs reallege and incorporate by reference paragraphs 1 through 79.

81. Prior to January 2001, defendants City and Kerik knew or should have known that:

    a. New York City police officers were routinely arresting domestic violence victims as well as the perpetrators of domestic violence;

    b. New York police officers were routinely arresting assault victims who asked the police to arrest their assailants;

    c. New York police officers were routinely failing to arrest perpetrators of domestic violence;

    d. New York police officers routinely removed children from the custody of their parents without probable cause and without Due Process of law;

    e. New York police officers routinely took children into government custody.

82. Defendants City and Kerik, however, maintained a policy of deliberate indifference to the aforementioned violations, and failed to develop or implement training programs to resolve the aforementioned violations.

83. Defendants City and Kerik knew or should have known that their failure to provide adequate training would cause said violations of constitutional rights to continue.

84. In failing to provide adequate training to their police officers, defendants City and Kerik were deliberately indifferent to the constitutional rights of New Yorkers who interact with police officers, such as plaintiff.

85. By reason of their lack of training, defendants Stuart, Doe 1, Doe 2 and Doe 3 arrested and detained plaintiff without probable cause.

86. By reason of their lack of training defendants Stuart, Doe 1, Doe 2 and Doe 3 wrongfully removed and detained infant plaintiff from the custody of plaintiff.

87. As a result of the defendants' actions, plaintiff suffered the loss of freedom and of the custody and services of her child and other expenses; the infant plaintiff suffered the loss of liberty and of the care and guidance of his mother; and both plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish, and depression.

WHEREFORE plaintiffs respectfully request that judgment be entered:

1. Declaring that defendants' removal and detention of infant plaintiff from the plaintiff was unconstitutional; and

2. Enjoining defendants from removing and detaining infant plaintiff from the plaintiff solely or primarily because plaintiff was a victim of domestic violence, i.e., without probable cause to believe that continuing in the care of plaintiff presents an imminent danger to the infant plaintiff's life or health; and

3. Declaring that defendants' policy or practice of shifting the burden to the plaintiff to prove that she will not be battered in the future is unconstitutional; and

4. Enjoining defendants from shifting the burden to the plaintiff to prove that she will not be battered in the future; and

5. Declaring that defendants' policy and/or practice of ignoring lawful court orders is unconstitutional; and

6. Enjoining defendants from ignoring lawful court orders without legal excuse; and

7. Ordering defendants to provide training to their agents and employees on:

   a. investigating child abuse and neglect cases involving mothers who are victims of domestic violence;

   b. determining whether probable cause exists to remove or detain children whose mothers are domestic violence victims, i.e., whether there exists probable cause to believe that continuing in the care of their mothers presents an imminent danger the children's life or health; and

   c. the provision of notice and an opportunity to be heard prior to, or immediately after, the removal of children; and

   d. the constitutional rights of domestic violence victims and their children in child welfare investigations; and

   e. the legal requirement that child protective workers and their attorneys are subject to and must obey lawful court orders; and

8. Awarding plaintiff and the infant plaintiff full and fair compensatory damages as decided by the jury; and

9. Awarding plaintiff and the infant plaintiff full and fair punitive damages as decided by the jury; and

10. Awarding plaintiff and the infant plaintiff interest from January 1, 2001; and

11. Awarding plaintiff and the infant plaintiff reasonable attorney fees pursuant to 42 U.S.C. §1988; and

12. Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       February 19, 2002

_____
CAROLYN A. KUBITSCHEK (CK6415)
LANSNER & KUBITSCHEK
Attorney for Plaintiffs
325 Broadway
New York, New York 10007
(212) 349-0900

15